IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| DAVID W. AKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:21-CV-193-Z |
| | § | |
| VALLEY PROTEINS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Dismiss ("Motions") (ECF Nos. 36, 37, 40). Defendants are Valley Proteins, Inc., Reina Marquez, Laboratory Corporation of America Holdings ("LabCorp"), Kelly Goodner, and HireRight LLC (collectively "Defendants"). Having considered the Motions, related pleadings, and relevant law, the Court **GRANTS** the Motions and **DISMISSES** Plaintiff's Second Amended Complaint **WITH PREJUDICE**.

**BACKGROUND**

Plaintiff David Akins ("Plaintiff") alleges the following facts concerning Defendants.[1] Defendant Valley Proteins formerly employed Plaintiff as a commercial motor-vehicle driver. *See generally* ECF No. 29. On August 20, 2020, Defendant Marquez — Plaintiff's supervisor — instructed Plaintiff to take a chain of custody form ("CCF") and visit Defendant LabCorp for a random drug test. *Id.* at 3. Plaintiff did not successfully complete a urine test on his first attempt. *Id.*

---

[1] The Court ordered briefing regarding any relationships between Defendants "that existed at the time of the events alleged in the Second Amended Complaint." ECF No. 55 at 1. Defendants explained "Defendants Valley Proteins and HireRight have a contractual relationship pursuant to which HireRight furnishes background screening reports and related services to Valley Proteins in connection with Valley Proteins's screening of job applicants and employees." ECF No. 57 at 1. Defendant HireRight, in turn, uses Defendant LabCorp to administer drug-testing services. ECF No. 59 at 2–3. At the time of the Second Amended Complaint, Defendant LabCorp lacked a contractual relationship with both Defendants Valley Proteins and HireRight. ECF No. 58 at 1.

A Defendant LabCorp employee thus instructed Plaintiff to drink 40 ounces of water and "stay in the area" for the three hours Plaintiff had to complete a second attempt. *Id.* Plaintiff returned to Defendant LabCorp's lobby where he proceeded to drink water, as instructed. *Id.*

Because the five seats located in the lobby were occupied, Plaintiff notified an unnamed Defendant LabCorp employee that Plaintiff would wait outside in an empty hallway to maintain social distancing. *Id.* Plaintiff alleges he "had no reason to believe he was violating any policy since LabCorp posted a 'wait where your [sic] comfortable' program, adopted for adhering to CDC guidelines and requirements, as they related to Covid[-]19." *Id.* Upon Plaintiff's return, Sonya Spruill, a Defendant LabCorp employee, informed Plaintiff he should not have left the lobby. *Id.* at 4. Plaintiff told Spruill she failed to explain as much. *Id.* Plaintiff then followed Spruill back to the collection room, where Spruill began to complete Plaintiff's CCF. *Id.* According to Plaintiff, Spruill "incorrectly checked the 'Refusal to Test' box" located on the form. *Id.* Plaintiff thus "requested [Spruill's] supervisor." *Id.* Defendant Goodner, a Defendant LabCorp manager, removed the "Refusal to Test" mark and allowed Plaintiff to retest. *Id.* Plaintiff signed the CCF but did not see small print stating he "had left the office" located at the bottom of the form. *Id.*

Defendant Goodner "requested that Plaintiff have his employer fax a new CCF form." *Id.* Plaintiff notified his supervisor, Defendant Vasquez, of the situation and she "agreed to fax the form requested." *Id.* While Plaintiff waited in the lobby to retest, Defendant Vasquez called to inform Plaintiff that "they were unable to fax the form at that time" and then instructed Plaintiff "to leave LabCorp and return to work." *Id.* Defendant Vasquez confirmed "Plaintiff would return to LabCorp the next morning to complete the test." *Id.*

The next day, Plaintiff arrived at Defendant Valley Proteins to obtain a new CCF in order to retest. *Id.* at 5. But Defendant Valley Proteins suspended Plaintiff and informed him that he

2

would not be allowed to retest. *Id.* Instead, Defendant Valley Proteins would wait on the medical-review officer — a contractor of Defendant HireRight — to determine whether Plaintiff committed an unauthorized departure from the testing site's waiting area, thereby constituting a "refusal to test." *Id.* Plaintiff "called Kelly Goodner (on speaker phone in the presence of his supervisor and manager) and requested that she correct the omission on the CCF, that left out the details concerning Plaintiff's [second] attempt to test." *Id.* Defendant Goodner responded "she would be willing to correct the information if her legal [department] allowed it." *Id.* Plaintiff "then left Valley Proteins and went to Concentra, to be tested at his own expense" and "wrote a detailed letter to Valley Proteins management contesting the actions against him." *Id.*

In the following days, Plaintiff attempted to explain the situation to Defendants Valley Proteins and LabCorp. *Id.* Plaintiff requested Defendant LabCorp correct omissions on the CCF. *Id.* Defendant Goodner again responded she would have to ask her legal department for permission to correct the form. *Id.* Plaintiff "also asked Valley Proteins about a medical evaluation to be conducted, in accordance with [Federal Motor Carrier Safety Administration ('FMCSA')] regulations" and "apprised Kimberly Hadley of a discussion he had with FMCSA employee Robert Ashby in Washington DC and provided her his contact information, requesting that they reach out to him."[2] *Id.*

On August 27, 2021, Jason Evans, manager of Defendant Valley Protein's Amarillo office, fired Plaintiff. *Id.* at 6. Plaintiff asked Evans whether he had been investigated, as required by FMCSA rules. *Id.* Evans responded: Defendant Valley Proteins "had received the determination from the [medical-review officer] and that is all they were relying on." *Id.* Plaintiff "filed a dispute

---

[2] Plaintiff notes, "[d]uring sworn testimony [Kimberly Hadley] admitted that no effort was made to contact the Department of Transportation ('DOT') for clarification of VP's requirements and responsibilities in this matter." ECF No. 29 at 5.

with HireRight based on the incomplete and inaccurate information on the CCF report, as well as their final determination of 'Refusal to Test.'" *Id.* Defendant HireRight "took 30 days without doing an investigation, and sent a letter to Plaintiff that the Employer decided to accept the decision made by the 'collector' of Refusal to Test." *Id.* Plaintiff then "filed a 100[-]word rebuttal to the charges against him, as provided by FCRA 15 US Code § 1681i." *Id.*

Plaintiff sought new employment. In particular, Plaintiff applied to LandStar Trucking Company ("LandStar"). LandStar — however — informed Plaintiff that he would not be eligible for a contract because "he had 'Refused a Random Drug Test.'" *Id.* LandStar then orally provided Plaintiff the email address of Defendant Valley Proteins management — from whom Landstar received information of Plaintiff's "refusal to test." *Id.*

Five months later, the Texas Workforce Commission awarded Plaintiff unemployment benefits due to Defendant Valley Proteins's submission of incomplete documentation. *Id.* By that time, however, Plaintiff had taken early Social Security retirement benefits. *Id.* at 7. When Plaintiff reached out to Defendant HireRight to ask what was reported on the Drive-A-Check ("DAC") report, the employee stated: "it only says that Valley Proteins terminated Plaintiff for violation of company policy." *Id.* Plaintiff then requested a copy of the DAC report. *Id.* The DAC report only mentioned a "refusal to test" and did not include the 100-word rebuttal Plaintiff filed with Defendant HireRight. *Id.*

On August 13, 2021, Plaintiff sued Defendants in the 251st Judicial District of Texas. *See generally* ECF No. 1-3. Plaintiff brought his lawsuit *pro se*. *Id.* Defendants removed the action to this Court. *See generally* ECF No. 1. Plaintiff asserts six causes of action: (1) negligence; (2) gross negligence; (3) negligence per se; (4) wrongful termination; (5) defamation of character; and (6) violation of Plaintiff's rights under Fair Credit Reporting Act ("FCRA") rules

4

and regulations. ECF No. 29 at 7. Defendants filed separate motions to dismiss based on Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 36, 37, 41.

### LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (internal marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal marks omitted). "The court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Id.* (quoting *Martin K. Eby Constr. Co., Inc. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

A court should first "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* When "well-pleaded factual allegations" exist, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

5

This standard of "plausibility" is not necessarily a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).

ANALYSIS

Plaintiff asserts claims for negligence, gross negligence, negligence per se, defamation of character, and FCRA violations against all Defendants. Plaintiff also sues Defendants Valley Proteins and Marquez for wrongful termination.

**A. Plaintiff's Common-Law Claims Fail**

In 1991, Congress passed the Omnibus Transportation Employee Testing Act ("OTETA"). Pub. L. No. 102–43, 105 Stat. 952–56 (1992) (codified as amended at 49 U.S.C. §§ 45101–06). OTETA implemented drug-testing requirements in transportation industries — including for commercial motor carriers. *Id.* OTETA also created the FMCSA. *See id.* FMCSA regulations set forth employer and employee obligations related to federally mandated drug testing. Both OTETA and FMCSA regulations apply to Plaintiff's allegations.

Federal law preempts state law when: "(1) Congress expressly preempts state law; (2) [c]ongressional intent to preempt may be inferred from the existence of a pervasive federal regulatory scheme; or (3) state law conflicts with federal law or its purposes." *Frank v. Delta Airlines, Inc.*, 314 F.3d 195, 197 (5th Cir. 2002); *see also* Conor R. Harvey, *Breaking the Bank:*

6

*Split Interpretations of the Bank Acts in the Era of #MeToo*, 29 U. CHI. LEGAL F. 473, 479

("Federal preemption, read from the Supremacy Clause of the Constitution, . . . exists in three

different forms: (1) express preemption; (2) field preemption; and (3) conflict preemption.").

Relevant here, both OTETA and FMCSA regulations contain preemption provisions.

OTETA states:

> (g) Effect on State and local government regulations. -- A State or local government
> may not prescribe or continue in effect a law, regulation, standard, or order that
> is inconsistent with regulations prescribed under this section. However, a
> regulation prescribed under this section may not be construed to preempt a State
> criminal law that imposes sanctions for reckless conduct leading to loss of life,
> injury, or damage to property.

49 U.S.C. § 31306(g). And the FMCSA regulations similarly state:

> (a) Except as provided in paragraph (b) of this section, this part preempts any State
> or local law, rule, regulation, or order to the extent that:
>
> > (1) Compliance with both the State or local requirement in this part is not
> > possible; or
> >
> > (2) Compliance with the State or local requirement is an obstacle to the
> > accomplishment and execution of any requirement in this part.

49 C.F.R. § 382.109(a).

These provisions expressly preempt Plaintiff's state-law claims. *See Frank*, 314 F.3d

at 202. Entertaining common-law claims related to federally mandated drug testing would conflict

with FMCSA regulations. *See id.* at 201 ("Allowing Frank to avail himself to Texas's negligence

regime would impose duties on Delta [Airlines] that are independent from and duplicative of the

duties [the Federal Aviation Administration] imposes on airline industry employers."); *Mission

Petrol. Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 715 (Tex. 2003) (declining to recognize

common-law duty regarding federally mandated drug testing because OTETA and FMCSA

regulations provide a "comprehensive statutory and regulatory scheme").

By overriding State and local laws, regulations, rules, standards, and orders inconsistent with OTETA and FMCSA regulations, Congress accomplished three things. First, Congress "supported the preemption, where necessary, of state common law negligence claims." *Frank*, 214 F.3d at 199; *see also CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (stating "law, rule, regulation, order, or standard" language includes common-law negligence claims). Second, Congress approved FMCSA's authority to issue preemptive regulations after OTETA was passed. *Cf. Frank*, 214 F.3d at 199. Third — regarding OTETA specifically — "the narrow savings language implied a broad scope for federal preemption, since an exception for state criminal laws would hardly have seemed necessary if state law were only narrowly preempted." *Id.*; *see also Forsyth v. Barr*, 19 F.3d 1527, 1543 (5th Cir. 1994) (stating courts should read preemption provisions and saving clauses together without rendering either superfluous).

Additionally, DOT regulations do not create a private cause of action by which Plaintiff may pursue his claims. *See Freeman v. Middle Tp. Bd. of Educ.*, 529 F. App'x 213, 216 (3d Cir. 2013) (per curiam) (noting OTETA does not provide aggrieved employees a private right of action); *Brooks v. AAA Cooper Transp.*, 781 F. Supp. 2d 472, 488 (S.D. Tex. 2011); *Mission Petrol. Carriers*, 106 S.W.3d at 713; *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 308–09 (6th Cir. 2000); *cf. Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 170–71 (2d Cir. 1998) (holding no private right of action under Federal Aviation Administration drug-testing regulations); *Williams v. United Parcel Serv., Inc.*, 527 F.3d 1135, 1143–44 (10th Cir. 2008) (same); *Abate v. S. Pac. Transp. Co.*, 928 F.2d 167, 169–70 (5th Cir. 1991) (finding no private right of action under Federal Railroad Safety Act's drug-testing regulations). Plaintiff instead possesses an administrative remedy for his alleged wrongs. *See, e.g.*, 49 C.F.R. § 386.12(a)(1) (permitting persons to file complaint and initiate administrative proceeding).

OTETA and FMCSA regulations preempt Plaintiff's state-law claims. Therefore, Plaintiff's negligence, gross-negligence, wrongful termination,[3] and defamation-of-character claims fail. The Court **DISMISSES** these claims. And although Defendants failed to address Plaintiff's negligence per se claims in their briefs in support of their motions to dismiss, all Defendants request the Court dismiss the Second Amended Complaint in total. *See* ECF Nos. 36, 37, 40. Because the Court finds preemption prohibits all of Plaintiff's common-law claims, the Court also **DISMISSES** Plaintiff's negligence per se claims.

### B. Plaintiff's FCRA Claims Fail

Plaintiff alleges Defendants violated various FCRA provisions. *See, e.g.*, ECF No. 29 at 7. Plaintiff's Second Amended Complaint asserts allegations arising under Sections 1681i, 1681m, and 1681s-2.[4]

Many claims under the FCRA require a "consumer report" to be at issue. The FCRA defines a "consumer report" as:

> any written, oral, or other communication of any information by which a consumer reporting agency bearing on consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used . . . for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes . . . .

15 U.S.C. § 1681a(d). A "consumer" is "an individual." *Id.* § 1681a(c).

In *Hodge v. Texaco, Inc.*, the Fifth Circuit applied the FCRA to an employee's claim based on a urinalysis report prepared by a laboratory that conducted such tests. 975 F.2d 1093, 1094

---

[3] If Plaintiff qualifies as an at-will employee, the Court notes there is no common-law claim for wrongful termination of an at-will employee. *Schwager v. Telecheck Servs., Inc.*, No. 14-01-099-CV, 2002 WL 31995012, at *6 (Tex. App.—Houston [14th Dist.] Dec. 19, 2002, no pet.). But the Court does not address whether Plaintiff was an at-will employee of Valley Proteins.

[4] The Court also notes that Plaintiff does not cite Section 1681s-2 in his Second Amended Complaint. However, the Court interprets Plaintiff's references to "[f]urnisher . . . requirements and procedures" and a "[f]urnisher . . . [d]uty of [c]are" as invocations of Section 1681s-2's furnisher-of-information provisions. ECF No. 29 at 7, 12.

(5th Cir. 1992). The laboratory sent the employer a report that revealed marijuana use by the employee. *Id.* The employer terminated the employee based on the report. *Id.* The employee sued the employer, laboratory, and testing site under the FCRA for failing to use reasonable procedures to ensure the accuracy of the report. *Id.* at 1095. The Fifth Circuit concluded the drug test constituted a consumer report. *See id.* at 1095–96 ("By its own terms . . . FCRA applies not only to credit reports, but also to reports of consumers' employment eligibility. . . . Accordingly, we conclude that workplace drug test reports are not categorically excluded from coverage under FCRA.").

The Fifth Circuit — however — determined the FCRA's "'transactions and experiences' exclusion" excluded the drug test from the definition of "consumer report." *Id.* at 1094 (quoting 15 U.S.C. § 1681(d)). The exclusion narrows the definition of "consumer report" so that it does not include a "report containing information solely as to transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(i). The Fifth Circuit concluded the laboratory's report to the employer fell within the transactions-and-experiences exclusion and, the report therefore did not constitute a "consumer report" under the FCRA. *Hodge*, 975 F.2d at 1096.

The same result has occurred in similar circumstances. *See, e.g.*, *Martinets v. Corning Cable Sys., L.L.C.*, 237 F. Supp. 2d 717, 720 (N.D. Tex. 2002) (dismissing case against employer because report at issue was prepared based on information the testing agency "derived as part of its own analysis of the test"); *Warinner v. N. Am. Sec. Sols., Inc.*, No. 3:05-CV-244-S, 2008 WL 2355727, at *7 (W.D. Ky. June 5, 2008) ("Courts have held that surveillance reports regarding an employee's drug use compiled by a private investigator were excluded from the definition of 'consumer reports,' and the coverage of the FCRA, under this 'transactions and experiences'

exception, when the reports were based solely on the investigator's own experience with, and observations of, the employee."); *Salazar v. Golden State Warriors*, 124 F. Supp. 2d 1155, 1159 (N.D. Cal. 2000); *Chube v. Exxon Chem. Am.*, 760 F. Supp. 557, 561–62 (M.D. La. 1991); *cf. Dawson v. Bank of Am., N.A.*, 605 F. App'x 263, 266 (5th Cir. 2015) (stating "bank's report of its own experience with its customers would not constitute a consumer report" (quoting *Hodge*, 975 F.2d at 1096)); *Smith v. First Nat'l Bank of Atl.*, 837 F.2d 1575, 1579 (11th Cir. 1988); *Sweet v. LinkedIn Corp.*, No. 5:14-CV-04531-PSG, 2015 WL 1744254, at *4 (N.D. Cal. Apr. 14, 2015); *Borinski v. Williamson*, No. 3:02-CV-1014, 2004 WL 433746, at *2 (N.D. Tex. Mar. 1, 2004) ("Thus, where a financial institution furnishes information based solely on its own experience with the consumer, the information is not a consumer report, and the financial institution is not under those circumstances a consumer reporting agency."); *Freeman v. S. Nat'l Bank*, 531 F. Supp. 94, 95 (S.D. Tex. 1982); *Peller v. Retail Credit Co.*, 359 F. Supp. 1235, 1237 (N.D. Ga. 1973).

The CCF at issue was not based on information obtained from an outside source. Rather, it was "based solely on the reporter's own first-hand investigation of the subject," *i.e.*, Defendant LabCorp's observation of Plaintiff. *Hodge*, 975 F.2d at 1096. The CCF therefore does not constitute a "consumer report." *See* 15 U.S.C. § 1681a(d)(2)(A)(i). The DAC report compiled by Defendant HireRight, by contrast, is not a "report containing information solely as to transactions or experiences between the consumer and the person making the report." *Id.* As Defendant HireRight acknowledges, "the substance of that report [falls] outside of HireRight's control." ECF No. 41 at 6 n.3. Because the transactions-and-experiences exclusion does not exempt the DAC report, Plaintiff may base his claims on the DAC report — a "consumer report." 15 U.S.C. § 1681(d)(1).

Furthermore, many FCRA claims (but not all) must be lodged against a "consumer reporting agency." A "consumer reporting agency" includes "any person which, for monetary fees . . . engages in . . . the practice of assembling or evaluating . . . information on consumers for the purpose of furnishing consumer reports to third parties . . . ." *Id.* § 1681a(f). Only Defendant HireRight falls within this definition. Because this definition requires that the entity "engage[] in . . . the practice of assembling or evaluating . . . information on consumers for the purpose of furnishing consumer reports to third parties," Defendants LabCorp and Goodner do not qualify. *Id.* Defendants LabCorp and Goodner do not conduct drug tests to furnish "consumer reports" (of which the CCF is not) to third parties. *See id.* Defendants Valley Proteins and Marquez are also not "consumer reporting agencies." They are the users of consumer reports — such as the DAC report. *See id.* But Defendant HireRight uses information acquired firsthand by Defendant LabCorp to create the DAC report — a "consumer report" assembled to be furnished to third parties, such as Defendant Valley Proteins. *See id.*

In sum, only Defendant HireRight is a "consumer reporting agency," and although the CCF is not a "consumer report," the DAC report is a "consumer report." The Court now turns to the FCRA claims against Defendants.

### 1. Plaintiff's Section 1681i claims fail.

Section 1681i provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

*Id.* § 1681i(a)(1)(A).

Section 1681i also provides:

> Notwithstanding paragraph (1), a consumer reporting agency may terminate a reinvestigation of information disputed by a consumer under that paragraph if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information.

*Id.* § 1681i(a)(3).

  a. *Plaintiff's Section 1681i claims against Defendants LabCorp, Goodner, Valley Proteins, and Marquez fail.*

Because the Court finds these persons and entities are not "consumer reporting agencies," Plaintiff cannot sustain a Section 1681i claim against them. The Court **DISMISSES** Plaintiff's Section 1681i claims against these parties.

  b. *Plaintiff's Section 1681i claim against Defendant HireRight fails.*

To defeat a motion to dismiss a claim under Section 1681i(a), a plaintiff must set forth sufficient allegations from which a court can reasonably infer:

> (1) he disputed the completeness or accuracy of an item of information contained in his consumer file at [defendant] and notified [defendant] directly of that dispute; (2) [defendant] did not reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file in the manner prescribed by Section 1681i(a)(5) within the statutory period; (3) [defendant's] noncompliance was negligent or willful; (4) [plaintiff] suffered injury; and (5) [plaintiff's] injury was caused by [defendant's] failure to reinvestigate and record the current status of the disputed information or delete the item from the file.

*Green v. Innovis Data Sols., Inc.*, 3:20-CV-01614-L, 2021 WL 4244779, at *4 (N.D. Tex. Sept. 17, 2021) (quoting *Hammer v. Equifax Info. Servs., LLC*, 3:18-CV-1502-C, 2019 WL 7602463, at *2 (N.D. Tex. Jan. 16, 2019)); *see also Waggoner v. Trans Union, LLC*, No. 302-CV-1494-G, 2003 WL 22220668, at *9 (N.D. Tex. July 17, 2003) (specifying above inference applies to Section 1681i(a)).

The second allegation Plaintiff must set forth requires that he allege Defendant HireRight "did not reinvestigate" Plaintiff's dispute "free of charge." *Green*, 2021 WL 4244779, at *4.

Yet Plaintiff alleges the opposite. ECF No. 29 at 10; *see also Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012) (When an "allegation is contradicted by the other facts in the complaint," the Court may consider "the claim implausible on its face."). Plaintiff instead alleges Defendant "HireRight failed to conduct a good faith investigation of Plaintiff's dispute" and "failed to conduct a fair and honest investigation of these occurrences following Plaintiff's filing of a timely dispute." ECF No. 29 at 10; *see also id.* (stating Defendant HireRight "simply 'rubber stamped' [its] previous erroneous determination."); *id.* at 11 (detailing how Defendant HireRight "did not recuse [itself] from" the investigation). Plaintiff's dispute is with the outcome of the investigation — not the investigation itself. *See Boothe v. Equifax Info. Servs. LLC*, No. 3:21-CV-1766-D, 2021 WL 5630839, at *5 (N.D. Tex. Dec. 1, 2021) (stating "the court's inquiry is focused on the report's factual inaccuracy, not on whether [the plaintiff] thought the report was inaccurate" (emphasis removed)).

Plaintiff also fails to plead Defendant HireRight's reinvestigation harmed him. In fact, Plaintiff again pleads to the contrary. *See* ECF No. 29 at 6 (stating *Defendant Valley Proteins* informed LandStar of Plaintiff's "refusal to test" designation). Plaintiff does not plausibly "plead sufficient facts for the court to draw the reasonable inference that his [ ] report contained inaccurate information, a requirement for pleading a claim under . . . [Section] 1681i." *Boothe*, 2021 WL 5630839, at *6.

Moreover, Plaintiff alleges Defendant HireRight failed to include Plaintiff's 100-word rebuttal in the DAC report in violation of Section 1681i(b). ECF No. 29 at 11. Section 1681i(b) states:

> If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute. The consumer reporting agency may limit such statements to not more than one hundred words if it provides the consumer with assistance in writing a clear summary of the dispute.

15 U.S.C. § 1681i(b). The statement of dispute must be filed after the completion of the reinvestigation. *See id.* ("*If the reinvestigation does not resolve the dispute*, the consumer may file a brief statement setting forth the nature of the dispute. (emphasis added)). If a "statement of dispute is filed . . . the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof." *Id.* § 1681i(c). That is, "unless there [are] reasonable grounds to believe that [the statement of dispute] is frivolous or irrelevant." *Id.*

The Court cannot conclude "there [are] reasonable grounds to believe that [the statement of dispute] is frivolous or irrelevant." *Id.* Plaintiff's statement of dispute is *relevant* to his "refusal to test" designation. And Plaintiff's statement of dispute is *not frivolous*; Plaintiff asserts that although he left the designated waiting area, he did not *refuse* to test. In fact, Plaintiff tried to retest the same day and the next day. The Court cannot find that disputing the "refusal to test" designation — supplied on the DAC report without context — was either frivolous or irrelevant. Yet, although Plaintiff's statement of dispute is likely relevant and non-frivolous, Plaintiff fails to plausibly plead a claim for relief.

"The FCRA does not . . . impose strict liability for errors or provide a means for merely correcting an erroneous report." *Pettus v. TRW Consumer Credit Serv.*, 879 F. Supp. 695, 697 (W.D. Tex. 1994). "Rather, the FCRA provides a remedy for consumers who are actually damaged by a failure to comply with the Act's requirements." *Id.* "Actual loss or damage to the interests of another is, at least, a component of the cause of action based on negligence, and, in the absence of some other measure of damages, of intentional wrongs as well." *Hyde v. Hibernia Nat'l Bank in*

15

*Jefferson Parish*, 861 F.2d 446, 448 (5th Cir. 1998) (internal marks omitted). "Proof of damage is thus an essential part of" an FCRA case. *Id.*; *see also Pettus*, 879 F. Supp. at 697–98 (same).

Plaintiff details a lost job opportunity with LandStar. *See* ECF No. 29 at 6. Plaintiff does not contend he lost the LandStar opportunity based on Defendant HireRight's actions. To the contrary, Plaintiff's Second Amended Complaint discusses how Plaintiff lost the LandStar opportunity because *Valley Proteins* — Plaintiff's former employer who had let him go over the drug-test incident — told LandStar that Plaintiff had refused a random drug test. *See id.* Plaintiff does not allege an injury based on Defendant HireRight's failure to include Plaintiff's statement of dispute in the DAC report. Accordingly, the Court finds Plaintiff fails to state a Section 1681i(c) claim. *Cf. Pettus*, 879 F. Supp. at 698 ("There is no evidence that any potential employer rejected plaintiff based upon any credit reports issued by defendants."); *Jianqing Wu v. Trans Union*, No. AW-03-1290, 2006 WL 4729755, at *11 (D. Md. May 2, 2006) (granting summary judgment on the Section 1681i(c) claim "because [plaintiff] has not presented any evidence of actual damages").

Even if Plaintiff had alleged an injury arising from the omitted statement of dispute, Plaintiff would still need to allege that Defendant HireRight acted either negligently or willfully. *See* 15 U.S.C. §§ 1681n, 1681o (willfulness and negligence requirements). Plaintiff asserts the failure to include the 100-word statement of dispute was willful. But Plaintiff's assertion is mere conjecture. *See Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 793 (N.D. Tex. 2014) ("[R]egardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal."); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (same).

Based on the foregoing, the Court **DISMISSES** Plaintiff's Section 1681i(c) claim against Defendant HireRight.

    2.  Plaintiff's Section 1681m claims fail.

Section 1681m applies to "users of consumer reports" who take "adverse actions on basis of information contained in consumer reports." *See generally* 15 U.S.C. § 1681m. Section 1681m is enforced "exclusively under section 1681s of this title by the Federal agencies and officials identified in that section." *See* 15 U.S.C. § 1681m(h)(8)(B). Accordingly, Plaintiff cannot pursue a private action under Section 1681m. *See Villagran v. Freeway Ford, Ltd.*, No. H-05-2687, 2006 WL 964731, at *1 (S.D. Tex. Jan. 19, 2006) (stating Section 1681m precludes private actions). The Court **DISMISSES** Plaintiff's Section 1681m claims against these parties.

    3.  Plaintiff's Section 1681s-2 claims fail.

Plaintiff also appears to allege Section 1681s-2 claims against Defendants LabCorp, Goodner, and Valley Proteins. *See, e.g.*, ECF No. 29 at 7 (stating Defendants LabCorp and Goodner owed Plaintiff a duty to comply with "CRA (Furnisher) requirements and procedures); *id.* at 12 (stating Valley Proteins was a "furnisher" of information).

Section 1681s-2(a) and (b) address the duties of "furnishers" of information to consumer-reporting agencies. Under Section 1681s-2(a), "[a] person shall not furnish any information relating to a consumer to any consumer-reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a). And Section 1681s-2(b) imposes investigatory requirements for furnishers who have first received requisite notice from a consumer-reporting agency. *See* 15 U.S.C. § 1681s-2(b).

The FCRA does not define "furnisher of information." "Courts in the Fifth Circuit have defined the term ['furnisher of information'] broadly to mean an entity that transmits information

concerning a particular debt owed by a consumer to a consumer reporting agency." *Shaunfield*, 991 F. Supp. 2d at 794 n.7 (internal marks omitted). Valley Proteins does not meet this definition. Because Defendants LabCorp and Goodner provide information (not about a particular debt, but about drug tests, which can qualify as information on consumer reports under the FCRA) to Defendant HireRight so that Defendant HireRight can compile the DAC report, Defendants LabCorp and Goodner appear to qualify as "furnishers of information."

As for Plaintiff's Section 1681s-2(a) claims, Plaintiff lacks a private right of action. *See Davis v. Sallie Mae, Inc.*, No. 3:09-CV-00821-B, 2009 WL 2525303, at *3 (N.D. Tex. Aug. 18, 2009); *Conrad v. Barclays Bank Del.*, No. 4:17-CV-1045, 2017 WL 7796344, at *2 (S.D. Tex. July 27, 2017); *Owens v. TransUnion, LLC*, No. 4:20-CV-665-SDJ-KPJ, 2021 WL 5088686, at *4 (E.D. Tex. Aug. 30, 2021) ("As numerous courts have found, § 1681s-2(a) does not create a private right of action.").

Yet a private cause of action exists to enforce Section 1681s-2(b). *Hall v. LVNV Funding, L.L.C.*, 738 F. App'x 335, 336 (5th Cir. 2018). The Fifth Circuit has held Section 1681i(a)(2)'s notice requirement must be satisfied to trigger furnisher duties under Section 1681s-2(b). *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002). As the Fifth Circuit explained, the FCRA requires a credit-reporting agency to give notice of a dispute to a furnisher of information within five business days from the time the consumer notifies the consumer-reporting agency of the dispute. *Id.* at 639–40.

Section 1681s-2(b) liability is triggered "only after the furnisher receives notice of dispute from *the consumer reporting agency*, not just the consumer" *Vazquez-Garcia v. Trans Union de P.R., Inc.*, 222 F. Supp. 2d 150, 158 (D.P.R. 2002). Plaintiff does not allege Defendants LabCorp and Goodner "receive[d] notice of a dispute from" from Defendant

HireRight, "not just the consumer." *Id.* Although Plaintiff alleges Defendants LabCorp and Goodner breached their duties under "CRA (Furnisher) requirements," he alleges he directly notified Defendants LabCorp and Goodner of their breaches. *See* ECF No. 29 at 8 (stating Defendants LabCorp and Goodner violated the FCRA "when they refused to correct the omissions of which the Plaintiff notified them"). A direct dispute with Defendants LabCorp and Goodner does not provide the basis for a Section 1681s-2(b) claim. *See, e.g.*, *Ugorji v. Toyota Fin. Servs.*, No. H-21-2884, 2021 WL 4863202, at *2 (S.D. Tex. Oct. 19, 2021) ("Plaintiff's Original Petition does not allege that . . . the [consumer-reporting] agency notified Defendant of the dispute, that Defendant failed to conduct an investigation, or that Defendant failed to correct the inaccuracies . . . . The court concludes that Plaintiff has not stated a claim under 15 U.S.C. § 1681s-2(b)."). Based on the foregoing, the Court **DISMISSES** Plaintiff's Section 1681s-(b) claims against Defendants Valley Proteins, LabCorp, and Goodner.

CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motions and **DISMISSES** Plaintiff's Second Amended Complaint **WITH PREJUDICE**.

SO ORDERED.

June 23, 2022

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE